# In the United States Court of Federal Claims

No. 19-1419C

(Filed: December 23, 2020)

|  |  |  |
|---|---|---|
| **JOHNSON LASKY KINDELIN ARCHITECTS, INC.,** | ) ) ) |  |
|  | ) ) | Contract Disputes Act; contract damages; tort damages; sounding in tort; joint and several liability; jurisdiction; RCFC 12(h)(3); government claim; government counterclaim; contracting officer's final decision; RCFC 14; RCFC 19 |
| *Plaintiff,* | ) ) |  |
| **v.** | ) ) |  |
| **THE UNITED STATES,** | ) ) |  |
| *Defendant.* | ) ) ) |  |

*Lucas T. Hanback*, Rogers Joseph O'Donnell, P.C., Washington, DC, for plaintiff. With him on the briefs were *Stephen L. Bacon* and *Matthew Ligda*.

*P. Davis Oliver*, United States Department of Justice, Civil Division, Washington, DC, for defendant. With him on the briefs were *Joseph H. Hunt*, Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *Elizabeth M. Hosford*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

## ORDER AND OPINION

### I.     Introduction

This case presents what appears to be a jurisdictional issue of first impression: whether this Court has jurisdiction – pursuant to the Tucker Act, 28 U.S.C. § 1491(a), and the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101–7109 – to decide a case predicated upon a government claim contained in a contracting officer's final decision finding that two, unrelated contractors are jointly and severally liable for the same injury and sum certain arising from independent breaches of their respective contracts.

The Court answers that question in the negative and, accordingly, dismisses this case for lack of jurisdiction.

## II.    FACTUAL BACKGROUND[1]

### A.  The Parties and The Contracts At Issue

Plaintiff and Counterclaim-Defendant, Johnson Lasky Kindelin Architects, Inc. ("JLK"), is an Illinois corporation that provides architectural and engineering services. ECF No. 1 ("Compl.") ¶ 1.  Defendant and Counterclaim-Plaintiff is the United States of America, acting by and through the General Services Administration ("GSA").  ECF No. 12 ("Answer" or "Counterclaim") ¶ 2.  On or about December 23, 2010, GSA awarded JLK a contract to provide architectural and engineering services.  Compl. ¶ 4; *see* ECF No. 1-1 ("Ex. 1"); Answer ¶ 4.

Pursuant to that contract, GSA issued Task Order GS-P-05-14-FB-0103 ("the JLK Task Order") to JLK to provide professional design services as the architect-engineer supporting the relocation of existing National Labor Relations Board ("NLRB") office space in the Dirksen building in Chicago, Illinois ("the Courthouse").  Counterclaim ¶ 4. GSA separately contracted with Master Design Build, Inc. ("MDB") – via Delivery Order GS-P-05-14-FB-0059 ("the MDB Delivery Order") – to provide the necessary construction services for the relocation of the NLRB office space.  *Id.* ¶ 5.

Among other items, JLK's proposed "work include[d] locating and specifying infrastructure (conduit and back boxes) for the telecommunications and security systems" as well as "[t]he design of a supplemental air conditioning unit[.]"  Ex. 1 at 133, 135.  Prior to the construction, "the 8th floor of the Dirksen building had an existing glycol water system used to provide coolant to the elevators and to supplemental cooling units that are typically utilized in tenant server rooms."  Compl. ¶ 15.  As part of the NLRB build out, a new computer room air conditioning unit ("CRU") had to be added for a new server room.  *Id.* at ¶ 16.  That, in turn, required "[n]ew supply lines . . . to provide glycol water to the CRU."  *Id.* at ¶ 17.  To ensure "adequate flow of coolant to the CRU[,] a small inline pump was added to the supply line prior to the CRU."  *Id.* at ¶ 18.  JLK was responsible for designing the new air conditioning unit, while MDB was tasked with the installation of the new cooling system.  *Id.* at ¶ 8.

---

[1] This section does not constitute factual findings by the Court.  Rather, this Court assumes, as it must, that the factual allegations contained in the government's Counterclaim are true for the purposes of resolving the Plaintiff's pending motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). The Court also has referenced facts from the Plaintiff's Complaint for context and clarity, and has considered "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record."  *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)); *see also* RCFC 9(k); ECF No. 13 ("Pl. Mot.") at 3 n.1.

### B. Damage To The Government's Courthouse

On March 3, 2016, MDB attempted to investigate what sounded like a "hammering noise" emanating from the cooling system that had been installed in the Courthouse.  Counterclaim ¶ 17.  MDB sent a technician from the CRU's manufacturer to the Courthouse to investigate the noise.  *See id*.; Compl. ¶ 24.  GSA, however, did not permit the service technician to access the site, because the technician allegedly did not possess the contractually required security clearance.  Counterclaim ¶ 17.

On March 15, 2016, a condenser fluid pipe in the newly installed cooling system malfunctioned and caused extensive damage to parts of the Courthouse, including parts of the NLRB space, as well as portions of the United States Bankruptcy Court on the sixth and seventh floors.  Counterclaim ¶¶ 6–7.

Following the leak, GSA retained Bailey Edward, an independent architecture and engineering consulting firm, to conduct a forensic investigation to ascertain the cause of the condenser fluid piping system failure and to issue a report.  *See* ECF No. 1-3 ("Bailey Edward Study"); *see also* Compl. ¶14.  The Bailey Edward Study concluded, among other things, that

> [t]he design called for a centrifugal wet rotor pump without any provision to turn the pump off when flow was not needed . . . When the motorized control valve is closed and the pump remains energized, the pump is operating under a no flow condition which results in premature pump failure. . . . Operating the pump in a no flow condition also causes the water within the impeller housing to heat up and could have resulted in failure of the downstream gasket. In this particular instance the no flow condition from the closed control valve resulted in vibration that was transmitted to the connected piping and additionally created objectionable noise.

Bailey Edward Study at 6; *see* Counterclaim ¶ 12.  The Bailey Edward Study also found that JLK's design documents identified spring isolation hangers that MDB had not installed.  Bailey Edward Study at 6; Counterclaim ¶ 16.  Specifically, Bailey Edward concluded that

> [a]lthough the design identified that spring hangers were to be installed at the pump, none were provided. Per the GSA P100 document all pumps should be provided with flexible connections on the inlet and discharge. However, the installation of such appurtenances was not identified in the contract documents, and flexible connections were not provided by the contractor. The installation of these devices

would have reduced the vibration transmitted from the pump
to the piping and increased the time to failure.

Bailey Edward Study at 6; Counterclaim ¶ 16.

Bailey Edward also determined that:  MDB had failed to install a specified filter
and strainer and to check a valve; the bolts on the pump flange that malfunctioned were
not equally tightened (with one bolt being only one-third as tight as the others);  a
disconnect switch for the pump had not been installed as specified;  and a liquid sensor
that would have triggered an alarm in the event of a leak was not properly installed.
Bailey Edward Study at 5–8; *see* Counterclaim ¶¶ 10–16.  Thus, the Bailey Edward Study
determined that "several aspects of JLK's design were not installed by MDB as specified
in JLK's design."  Bailey Edward Study at 4–5; *see also* Pl. Mot. at 2.

Ultimately, Bailey Edward determined that it could not assign fault to JLK to the
exclusion of MDB (or the government):

> Although considerable efforts have been performed to
> research, review and craft the report, no conclusive evidence
> is available to find fault with a single component, party or
> decision . . . It is the opinion of [Bailey Edward] that the leak
> resulted due to the confluence of several factors. Elimination
> of one or two of these factors *may* have eliminated the
> premature failure of the glycol system.

Bailey Edward Study at 8, 10 (emphasis added) ("Based on the email chain within the
Appendix C letter, the GSA was to coordinate access with the manufacturer's
technician.  Since the technician was not allowed access to the facility, it would seem
that the GSA did not diligently coordinate access.").

### C.  The Government's CDA Claim

On September 18, 2018, following the completion of the Bailey Edward Study,
Ms. Kathern M. Williams, the cognizant contracting officer ("CO") for the Courthouse
project, issued a contracting officer's final decision ("COFD") on a government claim,
pursuant to the CDA, 41 U.S.C. § 7101 *et seq.*  ECF No 1-2.  The COFD was addressed
jointly to JLK and MDB, and claimed damages allegedly caused by "the glycol piping
system leak that occurred on March 15, 2016 at the [Courthouse]."  *Id.* at 1.  The COFD
initially noted that "[d]esign and construction services *were provided separately*" by JLK
and MDB "for the buildout of new office space for the [NLRB]."  *Id.* (emphasis added).
After describing the damage to the Courthouse and the Bailey Edward Study, the
COFD concluded that "[b]oth JLK and MDB are at fault, *and are jointly and severally
liable . . . .*" *Id.* at 3 (emphasis added); *see also id.* at 4 ("GSA has determined that JLK
and MDB are both jointly liable for all of the costs to address this issue.").

Accordingly, the COFD demanded "that JLK and MDB *collectively* reimburse GSA $1,938,866.86 to offset the costs incurred as a result of the [leak]." *Id.* at 5 (emphasis added); *see* Counterclaim ¶¶ 19, 24.

### D. JLK's Complaint and The Government's Counterclaim

While MDB appealed the COFD to the Civilian Board of Contract Appeals ("CBCA"),[2] JLK filed a timely Complaint in this Court, requesting that we vacate the COFD with respect to JLK. Compl. at 10 ("Conclusion and Request for Relief"). Specifically, JLK contends that "[t]he decision of the Contracting officer is incomplete and unfinished as it fails to attribute percentages of fault between JLK and MBD but only states that each party is jointly and severally liable." *Id.* Furthermore, JLK alleges that "[t]he Contracting Officer improperly attributed equal fault to JLK and MBD without finding any degree of liability attributable to the GSA, even though the forensic investigators faulted the government for failing to admit a technician to the premises prior to the system failure." *Id.* ¶ 65. Finally, JLK maintains that it cannot be liable for costs under MDB's second contract to remediate the leak or the damages that were caused by the glycol leak. *Id.* ¶ 62.

In response to JLK's Complaint, the government, on January 9, 2020, filed its Answer and Counterclaim, seeking a judgment for the $1,938,866.86 claimed in the COFD for JLK's alleged breach of its contractual obligations. Counterclaim ¶¶ 1, 24. In general, the government alleged:

> JLK failed to fulfill its contractual obligation to provide a complete design that was in total compliance with all applicable regulations, design standards, and best practices applicable to the project [and] failed to fulfill its contractual obligation to diligently review all product and material submittals for conformance to the construction documents and GSA standard practices and requirements.

*Id.* ¶¶ 20–23 (alleging breach of contract where "JLK's design . . . was a substantial factor in the failure and subsequent leaking of the condenser piping network"). The government also disputed JLK's allegations regarding GSA's alleged refusal to permit a service technician to enter the building to assess the "hammering noise." *Id.* ¶ 24.

The government's Counterclaim acknowledges that the COFD "concluded that JLK and MDB are jointly liable for the damage caused by the piping system leak and demanded that they collectively reimburse GSA a total of $1,938,866.86." *Id.* ¶ 23.

---

[2] *Appeal of Master Design Build, LLC*, CBCA No. 6331.

### E.  JLK's Motion to Dismiss

On January 30, 2020, JLK filed its motion to dismiss the government's Counterclaim pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), for failure to state a counterclaim upon which relief could be granted.  Pl. Mot. at 1.  Specifically, JLK argues that dismissal is warranted "because under the facts plead[ed] the GSA cannot demonstrate the necessary element of causation for it to prevail under a breach of contract claim[,] [as] the GSA cannot show: 1) that the construction contractor complied with the design as required under a design defect claim; or 2) [that] the failure to conduct inspections and reviews was the cause of the damage to the government."  *Id.*  JLK noted that "MDB was also issued the same [COFD], but MDB appealed the decision to the [CBCA] in December 2018."  *Id.* at 4 n.2 (explaining "that appeal is still pending as of the date of this filing").

On March 3, 2020, the government filed its response in opposition to JLK's motion to dismiss.  ECF No. 17 ("Def. Resp.").  The government argued that "[b]ecause [its] counterclaim contains sufficient factual allegations to satisfy all of the elements of a breach of contract, JLK's motion to dismiss should be denied."  *Id.* at 6.  Furthermore, the government contests JLK's assertion that the government's Counterclaim should be dismissed – based on its failure to demonstrate that MDB complied with JLK's design – because the "design compliance principle does not defeat the Government's defective design claim."  *Id.* at 8.

On March 17, 2020, JLK filed its reply brief in further support of its motion to dismiss the government's Counterclaim.  ECF No. 18 ("Pl. Rep.").  In that reply brief, JLK explained once again that "GSA is actively prosecuting an affirmative claim against the construction contractor, MDB, for its failure to 'properly and diligently install the Glycol Piping System in conformance with the construction documents and standard construction practice.'"  Pl. Rep. at 2 n.1 (citing *Appeal of Master Design Build, LLC*, CBCA No. 6331).  JLK thus argues that the government's position here is "fundamentally incompatible with GSA's position in the ongoing litigation against the construction contractor" in the CBCA case involving MDB.  *Id.*

### F.  First Supplemental Briefing Order

After JLK's motion to dismiss was fully briefed, the Court identified a number of issues that the parties had not sufficiently addressed.  Accordingly, the Court instructed the parties to be prepared to address several discrete topics during oral argument and to file supplemental briefs addressing only those enumerated topics.  ECF No. 20.  Specifically, the parties were ordered to address:

> (1) [T]he legal standard for demonstrating joint and several liability under the contract(s) at issue; (2) the impact on this case of related litigation, if any, between Master Design Build,

Inc. and the General Services Administration before the United States Civilian Board of Contract Appeals; [and] (3) the practical implications, if any, that would arise from a dismissal of the government's Counterclaim at this stage of the case . . . .

*Id.* at 2.  On May 20, 2020, both parties timely submitted their respective supplemental briefs.  *See* ECF No. 21 ("Def. First Supp. Br."); ECF No. 22 ("Pl. First Supp. Br.").

JLK, in its supplemental brief, reiterated that GSA must allege and prove that "MDB complied with JLK's design as stated in *C.H. Guernsey & Co. v. United States*, 65 Fed. Cl. 582, 596 (2005) and other applicable authorities" and that because the government does not plead sufficient facts to show that MDB complied with JLK's design, the government has failed to state a claim. Pl. First Supp. Br. at 2.  JLK also addressed the issue of joint and several liability, arguing that "JLK and MDB each have privity of contract with GSA and are bound by separate contractual obligations to which neither is a joint promisor."  *Id.* at 2–3.  Accordingly, JLK maintained that it "and MDB cannot be held 'jointly and severally liable' for the damages alleged by GSA."  *Id.* Focusing specifically on the pending CBCA litigation between GSA and MDB, JLK argued that "GSA should not be permitted to obtain a windfall from JLK by double recovering amounts paid by MDB to redress the same harm stemming from the leak" and that "GSA cannot plausibly allege in this action that MDB complied with JLK's design, while taking a contrary position in the CBCA[.]" Appeal."  *Id.* at 4.

The government, in its supplemental brief, argued that because the "counterclaim seeks to hold plaintiff liable for its defective design claim," the government has stated a claim as a matter of law, as required by RCFC 12(b)(6).  Def. First Supp. Br. at 2.  Notwithstanding that the government previously had not addressed the parallel CBCA matter, the government conceded that "[b]ecause the Government is not entitled to double recovery and a windfall in excess of its damages, a CBCA judgment in favor of the Government could potentially limit the amount the Government would be entitled to recover *in this litigation*."  *Id.* at 3 (emphasis added).

### G. Oral Argument and Further Supplemental Briefing Order

On May 21, 2020, the Court held oral argument on JLK's motion to dismiss the government's counterclaim.  *See* Minute Entry, May 21, 2020.  During oral argument, the government conceded that dismissal of its Counterclaim would effectively end this case in favor of JLK.  May 21, 2020 Tr. 21:11–18.  Based on the government's concession and other representations made by both parties at oral argument, this Court became concerned that there were possible jurisdictional issues that the Court had to address. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either

overlook or elect not to press."); RCFC 12(h)(3). Accordingly, on May 22, 2020, the Court ordered the parties to submit additional supplemental briefs addressing a number of questions relating to jurisdiction. *See* ECF No. 23. Specifically, the Court instructed the parties to address the following questions:

1. Is the GSA contracting officer's final decision at issue a proper CDA claim pursuant to 41 U.S.C. § 7103(a)(3), given that it was issued for a single quantum against two different parties under two different contracts? . . .

2. If both JLK's and MDB's respective cases proceed to judgment, and the government prevails in both – and obtains full recoveries in both – how will the government and/or this Court and/or the CBCA decide which company owes what percentage of the total damages, given the government's concession in its supplemental brief that it cannot obtain a double recovery? . . .

3. Does the Court of Federal Claims (or the CBCA) possess jurisdiction, pursuant to the CDA, to decide a case premised upon a contractor or government claim "sounding in tort" that is the subject of a contracting officer's final decision (as opposed to tortious acts that also give rise to contract claims)?

4. Does the contracting officer's final decision at issue seek damages that may only be recovered under a joint and several liability theory that "sound[s] in tort"?

5. What is the test for whether a claim is "sounding in tort"? In that regard, may this Court consider the nature of the damages sought in assessing whether a claim is "sounding in tort"?

6. Would a judgment in full against MDB in favor of the government before the CBCA – independent of the government's ability to collect on that judgment – moot the government's claim against JLK in this matter?

7. Putting aside the Court's above questions regarding its jurisdiction over this matter, would consolidation of this litigation and the aforementioned CBCA action be proper . . . ?

*Id.* at 3. On June 5, 2020, the parties submitted their respective (post-oral argument) supplemental briefs. ECF No. 24 ("Pl. Second Supp. Br."); ECF No. 25 ("Def. Second Supp. Br.").

III.    **CDA Jurisdiction**

A court's jurisdiction defines the extent of its "statutory or constitutional power to adjudicate [a] case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted).  A court's "[s]ubject-matter jurisdiction may be challenged at any time by the parties, or by the court *sua sponte*." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); *see also, e.g.*, *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1346 (Fed. Cir. 2008).  In fact, "courts must always look to their jurisdiction, whether the parties raise the issue or not." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed. Cir. 1997).  If a court determines that a case falls outside its jurisdiction, "'the court cannot proceed at all ... [and] the only function remaining to the court is that of announcing [the lack of jurisdiction] and dismissing the cause.'" *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)); *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006); *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Tucker Act, 28 U.S.C. § 1491 – this Court's primary jurisdictional statute – waives sovereign immunity with respect to claims arising from contracts with the government, including claims and disputes subject to the CDA, 41 U.S.C. § 7104(b)(1).  The first subparagraph of the Tucker Act, § 1491(a), contains "the Tucker Act's general contract claim jurisdiction, which is not limited to only procurement contracts but more broadly to any contract claims." *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 464 (2019) (citing 28 U.S.C. § 1491(a)(1)).  Section 1491(a)(2) provides this Court with jurisdiction to decide disputes pursuant to the CDA, which "applies to disputes concerning federal government procurement contracts, including contracts for services." *Planate Mgmt. Grp., LLC v. United States*, 139 Fed. Cl. 61, 70 (2018) (citing 41 U.S.C. § 7102(a)(1)).  This Court has summarized the relationship between the two Tucker Act provisions as follows:

> The Tucker Act grants this court jurisdiction over "any claim against the United States founded ... upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), including "any claim by or against, or dispute with, a contractor arising under [41 U.S.C. § 7104(b)(1) ]," *id.* § 1491(a)(2).  The [CDA] statute expressly incorporated into the Tucker Act provides specifically, that "in lieu of appealing the decision of a contracting officer ... to an agency board, a contractor may bring an action directly on [a] claim in the United States Court of Federal Claims." 41 U.S.C. § 7104(b)(1).

*Sikorsky Aircraft Corp. v. United States*, 102 Fed. Cl. 38, 45 (2011); *see also Just in Time Staffing v. United States*, 143 Fed. Cl. 405, 410 (2019) ("The Court has jurisdiction, under the Tucker Act, to adjudicate a [CDA] claim . . . .").

The CDA, in turn, also addresses *government claims* against a contractor.  In that regard, the CDA provides that "[e]ach claim by the Federal Government against a contractor relating to a contract shall be the subject of a written decision by the contracting officer."  41 U.S.C. § 7103(a)(3).  Thus, "[i]t is a bedrock principle of government contract law that [CDA] contract claims, whether asserted by the contractor or the Government, must be the subject of a contracting officer's final decision." *Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014) (citing 41 U.S.C. § 7103(a)(3)); *cf. Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1111–12 (Fed. Cir. 2013) ("A prerequisite for jurisdiction of the Court of Federal Claims over a CDA claim is a *final decision* by a contracting officer on a valid claim." (emphasis in original)).[3]

Accordingly, our appellate court, the United States Court of Appeals for the Federal Circuit, has held that this Court's CDA "jurisdiction . . . requires both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010).  The government bears the burden of establishing jurisdiction over its proposed counterclaim. *Magnus Pac. Corp. v. United States*, 2016 WL 3776889, at *1 (Fed. Cl. July 13, 2016) (citing *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)); *see also Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 859 F.3d 1072, 1075 (Fed. Cir. 2017) ("A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists." (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))); *First Fed. Sav. Bank of Hegewisch v. United States*, 52 Fed. Cl. 774, 785 (2002) (citing *KVOS, Inc. v. Associated Press*, 299 U.S. 269 (1936), for the proposition that "Defendant bears the burden of establishing subject-matter jurisdiction for its counterclaims").

Absent a valid COFD, this Court lacks jurisdiction over this case.  RCFC 12(h)(3); *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1380 (Fed. Cir. 2007) (a court "may declare a contracting officer's final decision invalid — for whatever reason"); *Daff v. United States*, 78 F.3d 1566, 1571 (Fed. Cir. 1996) (holding, in the context of a government counterclaim, that "[a] valid contracting officer's decision is a prerequisite for a suit under the CDA"); *Case, Inc. v. United States*, 88 F.3d 1004, 1009 (Fed. Cir. 1996) (applying "the principle that an invalid contracting officer's decision may not serve as the basis for a CDA action"); *Atkins N. Am., Inc. v. United States*, 106 Fed. Cl. 491, 498 (2012) (holding that "the court has the authority to rule on the validity of a contracting officer's decision as part of its jurisdictional inquiry"); *Uniglobe Gen. Trading & Contracting Co., W.L.L. v. United States*, 115 Fed. Cl. 494, 513 (2014) ("the court has the authority to rule on the validity of a contracting officer's decision as part of its jurisdictional inquiry under [41 U.S.C.] § 7104(b)(3)");

---

[3] 41 U.S.C. § 7103(g) ("The contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced as authorized by this chapter.").

## IV.     The Court Lacks Jurisdiction Over the Government's Claim In The COFD

This Court lacks jurisdiction to decide this case because both the government's Counterclaim and the predicate COFD constitute a "damages [claim] . . . sounding in tort." 28 U.S.C. § 1491(a)(1). This Court's CDA jurisdiction does not encompass damages claims "sounding in tort." 28 U.S.C. §1491(a)(1); *Bronder v. United States*, 824 F.2d 980 (Fed. Cir. 1987) (holding "that appellant's claims sound in tort, of which the Board has no jurisdiction under the Contract Disputes Act"); *see also Ayala v. United States*, 16 Cl. Ct. 1, 4 (1988) (holding that "a request for tort damages" is "sounding in tort" and that "[t]he Tucker Act is explicit in withholding any consent to be sued in this court on [such] claims"); *Computer Power Support, Inc.*, PSBCA No. 3401, 94-2 B.C.A. (CCH) ¶ 26626 n.1 (Dec. 30, 1993) (holding that tort "damages are generally not recoverable before contract appeals boards"); *Finley*, PSBCA No. 3922, 98-2 B.C.A. (CCH) ¶ 29989 (Sept. 2, 1998) (same); *Adams*, ASBCA No. 34519, 87-3 B.C.A. (CCH) ¶ 20205 (Sept. 28, 1987) (holding that the boards of contract appeals, "do not review claims sounding in tort" and "do not award punitive or exemplary damages").

While the Court agrees with the self-evident proposition that the parties' dispute centers upon a government contract subject to the CDA – and while the COFD and Counterclaim contain facts generally supporting a breach of contract claim – both the COFD and the Counterclaim rely upon a tort theory of damages in their attempt to impose liability on JLK. Although apparently a case of first impression,[4] this Court holds that the CDA does not permit the government to issue a COFD on a government claim, finding two different contractors jointly and severally liable for the same quantum of damages under two different contracts, particularly where, as here, there is no mechanism to prevent the government's double recovery. Accordingly, and for the reasons explained below, this Court finds that the COFD improperly invokes a tort remedy and, thus, **DISMISSES** the government's Counterclaim – and the entire case – for lack of jurisdiction.

### A. The Government's Damages Theory Sounds In Tort

This Court lacks jurisdiction over damages claims "sounding in tort." 28 U.S.C. § 1491(a)(1). Indeed, the government concedes that "the contracting officer has no authority to decide a [CDA] claim 'sounding in tort[.]'" Def. Second Supp. Br. at 6. The government maintains, however, that its "claim here, restricted as it is by the contours of the contracting officer's final decision, does not sound in tort." *Id.* The Court rejects the government's position, and instead concludes that we lack jurisdiction over the government's COFD and the associated Counterclaim because the COFD is premised on a tort damages theory.

---

[4] Def. Second Supp. Br. at 2 ("We have not found any precedent in which a court has either prohibited or authorized this practice.").

As an initial matter, this Court always has a duty to correctly characterize the nature of the claims it is asked to decide. *See Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008) ("[T]he trial court was correct to look to the true nature of the action in determining jurisdiction at the outset."); *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994) ("Regardless of the characterization of the case ascribed by [a plaintiff] in its complaint, we look to the true nature of the action in determining the existence or not of jurisdiction.") (citations omitted); *Son Broad., Inc. v. United States*, 42 Fed. Cl. 532, 534 (1998) ("The court . . . is not required to accept plaintiff's framing of the complaint and, instead, must look to plaintiff's factual allegations to ascertain the true nature of plaintiff's claims."). In this case, and as explained further below, while the COFD and the related Counterclaim contain sufficient facts to generally support a claim for breach of contract – a classic CDA claim, to be sure – this Court cannot ignore that the government's COFD seeks to impose liability on JLK (and MDB) based upon a damages theory "sounding in tort." *See C.B.C. Enterprises, Inc. v. United States*, 24 Cl. Ct. 1, 5 (1991) ("The non-contractual nature of the claim is further highlighted by the type of damages sought.").

### 1.    Joint and Several Liability Is A Tort Damages Theory

The Tucker Act, neither generally nor as amended by the CDA, embraces either tort claims or damages claims "sounding in tort." 28 U.S.C. § 1491(a)(1). The COFD and the Counterclaim, however, are predicated upon a claim of "joint and several liability" against both JLK and MDB. COFD at 3; *see also* Compl. ¶ 29; Counterclaim ¶ 19. That is quite clearly a tort theory of damages and thus "sound[s] in tort." 28 U.S.C. § 1491(a)(1).

We begin with this helpful explanation of joint and several liability:

> Joint liability is distinct from "joint and several liability." What is *joint and several* liability? "Joint" refers to—as defined above—liability imposed on several defendants acting together. The "several" in "joint and several" liability refers to individual liability, a liability not dependent on the actions of others. A claim alleging "joint and several liability" is one where any defendant can be liable to the plaintiff in two ways: (1) regardless of whether any other defendant is liable ("several" or individual liability) or (2) where the defendant acted in concert with each and every defendant ("joint" liability). When a claim alleges joint and several liability and one defendant is found liable and other defendants are not, the two judgments are not inconsistent. That is because although the theory of "joint" liability has failed, the theory of "several" liability permits one defendant to be liable, even when the others are not.

*Lemache v. Tunnel Taxi Mgmt., LLC,* 354 F. Supp. 3d 149, 153 (E.D.N.Y. 2019) (citing *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980)). Thus, "[j]oint liability 'arises when a *tortious act* is committed by several persons acting in concert.'" *Cayuga Indian Nation of New York v. Pataki,* 79 F. Supp. 2d 66, 71 (N.D.N.Y. 1999) (emphasis added) (internal quotes omitted) (quoting *Thomas v. Sclavo, S.P.A.,* 1998 WL 51861, at *4 (N.D.N.Y. Feb. 4, 1998), and *Uranium Antitrust,* 617 F.2d at 1257). In such a case, "each tortfeasor is entirely responsible for the damage resulting from that concerted conduct." *Uranium Antitrust,* 617 F.2d at 1257. Accordingly, in a "true joint liability" situation, *Thomas,* 1998 WL 51861, at *4, "'[a] successful plaintiff may look to any one of the defendants for full satisfaction of a damage award.'" *Id.* at *4 n.1 (quoting *Uranium Antitrust,* 617 F.2d at 1257). "Implicit in this analysis is the notion that the liability of each party is dependent on the liability of the other—that is, that it would be logically inconsistent for one to be held liable while the other is not." *Lite-Up Corp. v. Sony Music Entm't, Inc.,* 1999 WL 436563, at *3 (S.D.N.Y. June 24, 1999).

Although "a defendant held severally liable is only liable for that portion of the plaintiff's damages that reflect the percentage of comparative responsibility assigned to that defendant[,]" Restatement (Third) of Torts § 11 cmt. a, when "[l]iability is said to be 'joint *and* several', [it] mean[s] that *each party* is *individually liable* to plaintiff *for the whole of the damage.*" *Cayuga Indian Nation of New York v. Pataki,* 79 F. Supp. 2d 66, 71 (N.D.N.Y. 1999) (emphasis in original) (quoting *Hecht v. City of New York,* 60 N.Y.2d 57, 62, 467 N.Y.S.2d 187, 190, 454 N.E.2d 527 (1983)).

The case law thus is overwhelmingly clear that the concept of "joint and several liability" is a standard tort doctrine, with no less than the United State Supreme Court describing "joint and several liability" as a "creature of tort law." *Honeycutt v. United States,* 137 S. Ct. 1626, 1631 (2017); *see also United States v. Burgess,* 684 F.3d 445, 458 (4th Cir. 2012) (discussing "the tort concept of joint and several liability"); *Stotmeister v. Cherry Hill Const., Inc.,* 2006 WL 1933871, at *4 (D.D.C. 2006) (explaining that a particular claim against the United States was "based on the theory of joint and several liability, . . . a tort doctrine" (citing Restatement (Third) of Torts § 10 (2000))); *Sutherland v. Islamic Republic of Iran,* 151 F. Supp. 2d 27, 48 (D.D.C. 2001) (holding "defendants . . . liable under the tort doctrines of *respondeat superior* and joint and several liability"); *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1356 (Fed. Cir. 2001) (discussing the common law conception of joint and several liability in tort cases); *In re Hemingway Transp.*, Inc., 993 F.2d 915, 924 (1st Cir. 1993) (distinguishing between "contract-based codebtor relationships" such as "guaranties" and "suretyships" and "'joint and several' tort-based obligations"); *Monarch Ins. Co. v. Hess Farms, Inc.,* 889 F.2d 1095 (9th Cir. 1989) (unpublished) ("The doctrine of joint and several liability is a tort doctrine."); *Menne v. Celotex Corp.*, 861 F.2d 1453, 1469 (10th Cir. 1988) (discussing the "traditional tort standard" of "joint and several liability"); *Barker v. Hostetter*, 2014 WL 6070757, at *8 (E.D. Pa. 2014) (discussing the "tort theory of joint and several liability"); *Henderson v. Sun Pharm. Indus., Ltd.*, 809 F. Supp. 2d 1373, 1382 (N.D. Ga. 2011) ("Absent an

underlying tort, Plaintiff's joint and several liability claim fails as a matter of law."); *Means v. Dunedin Apartments*, 2010 WL 11680587, at *2 (N.D. Ind. 2010) (describing a claim involving "the tort theory of joint and several liability"); *Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 99 (Tex. App. 2006) ("Joint and several liability is appropriate in tort cases when the independent tortious conduct of two or more persons is a legal cause of an indivisible injury *and in contract cases when two or more persons promise the same performance*." (emphasis added)); Bussel, *Liability for Concurrent Breach of Contract* (1995) 73 Wash.U. L.Q. 97, 124, 126 ("The reasons that justify the joint and several liability regime in tort in general do not apply in contract.").

There are a few, albeit narrow, circumstances in which courts have applied the concept of joint and several liability in breach of contract cases, none of which apply here. The first involves a situation where multiple signatories to a single contract undertake a joint obligation to another party. *See, e.g., Tel. Tower LLC v. Century Mortg. LLC*, 376 P.3d 333, 343 (Utah Ct. App. 2016) ("[A] joint and several contract is a contract made by the promisee with each promisor and *a joint contract made with all the promisors*, so that parties having a joint and several obligation are bound jointly as one party, and also severally as separate parties at the same time." (emphasis added) (citing 12 Williston on Contracts, § 36:1 (4th ed. 2012))). In such a case, each party is obligated for the full performance of the contract and thus the joint-promisors may be held jointly liable in the event of their non-performance. In essence, where two independent parties sign-up to render a particular contractual performance, they stand as guarantors for each other and, in the event of breach, may be held jointly liable for the non-performance of their joint contractual duties.

For example, in *Welch v. Sherwin*, 300 F.2d 716 (D.C. Cir. 1962), the United States Court of Appeals for the District of Columbia Circuit held that two parties to a contract were jointly liable, noting that

> [t]he general rule is 'that the obligation created by the promise of several persons is joint unless the contrary is made evident.' 2 Williston, Contracts § 323 (1936). Cf. Restatement, Contracts § 112 (1932). Moreover, [where a] contract . . . discloses an undivided promise to pay the entire fee[,] [t]his negates the view that each member made a separate promise to pay a pro rata share.

300 F.2d at 718. Because that case involved multiple obligors on the same contract and did not specify that each was liable only for a pro rata share of the attorney's fees at issue (and in fact expressly identified a joint obligation on the part of the promisors), the D.C. Circuit determined that the obligors were jointly liable for the entire fee. *Id*. The instant case arising from the government's COFD is distinguishable from *Welch*. Here, unlike in *Welch*, GSA entered into separate contracts with JLK and MDB for distinct

services to be provided independently by each contractor rather than including all parties as signatories on a single agreement. COFD at 1; Counterclaim ¶¶ 4–5.

More recently, other courts similarly have held that "[j]oint and several liability for a contractual claim depends on the relationship between the parties *and the existence of a joint obligation*." *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 420 (5th Cir. 2017) (emphasis added). In this case, however, as discussed *supra*, no such joint obligation exists. Rather, GSA retained JLK for architectural and engineering services and separately retained MDB to provide construction services. Joint and several liability as a damages theory is inapplicable in contract cases when damages are sought for breaches arising out of two separate contractual relationships with different contracting parties. Indeed, at least one Federal Circuit decision demonstrates that the government knows how to draft a contract to hold its contractual partners jointly and severally liable. In *Sadelmi Joint Venture v. Dalton,* "the contract between Sadelmi and the Navy require[d] that if the contractor [was] made up of more than one entity, each such entity [would] be *jointly and severally* liable under the contract. The joint venture agreement as amended expressly acknowledge[d] the '*joint and several* obligations undertaken with the [Navy].'" 5 F.3d 510, 513 (Fed. Cir. 1993) (emphasis added). While the issues in *Sadelmi* have nothing to do with the facts at issue here, the case makes clear that the government understands how to draft agreements in such a way as to hold distinct contractors jointly and severally liable where such a result is intended by the parties. In this case, in contrast, JLK and MDB are not partners in a joint venture, and GSA did not contract with JLK for it to be jointly and severally liable with MDB. Def. Supp. Br. at 1 ("The contracts at issue in this litigation do not provide for the imposition of joint and several liability.").

The second circumstance in which a few courts have applied joint and several liability in contract cases involves the so-called "concurrent-breach doctrine," a concept apparently recognized in less than a handful of jurisdictions.[5]  *See* Def. Second Supp. Br. at 10–11 (citing cases). According to that doctrine, "[w]hen two defendants independently breach separate contracts, and it is not 'reasonably possible' to segregate the damages, the defendants are jointly and severally liable." *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1030 (Ill. App. 2012) (quoting *Domtar, Inc. v. Niagara Fire Insurance Co.*, 563 N.W.2d 724, 740 (Minn. 1997)).

At first blush, this doctrine seems relevant to the instant case: the COFD claims damages of $1,938,866.86, allegedly owed by JLK and MDB jointly and severally, without distinguishing which party is liable for what portion of such damages or

---

[5] *Crescent Univ. City Venture, LLC v. AP Atl., Inc.*, 2019 WL 3765313, at *25–26 (N.C. Super. Aug. 8, 2019) (suggesting that only Minnesota and Illinois have adopted the concurrent-breach doctrine, and observing that "[o]ther courts have not been so keen to apply joint and several liability within the boundaries of contract-centric litigation").

without indicating a method by which to differentiate liability.[6]  An examination of the doctrine's provenance, however, reveals that it has firm roots in tort, which likely explains why it has not been adopted in contract law outside of just a few jurisdictions and is reflected neither in our Court's jurisprudence nor in that of our appellate court.

For example, in *N. Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 211 N.W.2d 120 (Minn. 1973) – a case the government cites, *see* Def. Second Supp. Br. at 10 – the Supreme Court of Minnesota considered an action for damages arising out of the faulty construction and subsequent reconstruction of an industrial building.  There, Northern Petrochemical Company, the owner of the building, brought a claim against its general contractor and the architect (the latter who, in turn, sought indemnity from its structural engineer).  *Id.* at 121.  The Court held as follows:

> The apportionment of damages where two or more persons approximately simultaneously cause harm to another through *independent acts of negligence* is discussed in Mathews v. Mills, 288 Minn. 16, 178 N.W.2d 841 (1970).  The theories underlying liability in the case at bar are essentially claimed negligent breaches of contractual obligations; there are no claims of intentional breaches.  Thus, we believe the rule announced in Mathews governing liability and apportionment of damages between *multiple tortfeasors acting independently* should apply.  In Mathews, we adopted the 'single injury' rule, which is that where it is not reasonably possible to make a division of the damage caused by *separate acts of negligence*, closely related in point of time, the negligent parties, even though they acted independently, are jointly and severally liable.

*Id.* at 128 (emphasis added) (italicized case names omitted in original).  As the Minnesota Supreme Court made clear, the doctrine of concurrent breach is rooted in yet an earlier case regarding negligence, a tort, and the existence of "multiple tortfeasors," rather than a breach of contract.  Indeed, as noted above, *N. Petrochemical* relied upon *Mathews v. Mills*, but *Mathews* itself involved an action for personal injuries and

---

[6] In the government's view, it cannot now, and should not have to, parse out liability among the separate contracts as part of its burden of proof in either the instant case before this Court or in the CBCA matter.  Def. Second Supp. Br. at 5–6 (arguing that "there would be no role for either tribunal to play with respect to determining how the Government's recovery of the damages award is allocated between MDB and JLK").  According to the government, it "would be entitled to either collect the entire award from either party or collect amounts that add up to the award from both parties" at the government's option, as part of "the collection route."  Def. Second Supp. Br. at 5-6.  This explanation raises more questions than it resolves, as explained *infra*.

property damages sustained in a multivehicle car accident. *Mathews v. Mills*, 178 N.W.2d 841, 842 (Minn. 1970).

Moreover, the government itself admits that the concurrent breach doctrine is utilized in contract cases that have "borrowed joint and several liability principles *from tort law*." Def. Second Supp. Br. at 10 (emphasis added). Citing the *Restatement (Second) of Contracts*, the government nevertheless asserts that "the joint and several liability doctrine has been applied in the field of contract law." *Id.* at 9 (citing *Restatement (Second) of Contracts* § 433(A)(2)). That *Restatement* provision, however, supports this Court's view that the joint and several liability is a tort doctrine, except in the case where two (or more) parties undertake contractual duties jointly, as part of the same contract. Indeed, even the government cites the *Restatement* specifically for the proposition that "when breach of a *joint contract* is at issue, joint and several liability is the appropriate method by which to apportion damages between the parties in breach, unless the contract specifies otherwise[.]" Def. Second Supp. Br. at 9 (emphasis added).

In this case, the government does not allege that there is a joint contract or that JLK and MDB somehow made joint promises. *GE Capital Commercial, Inc. v. Worthington Nat. Bank*, 754 F.3d 297, 306 & n.8 (5th Cir. 2014) (explaining that the "requirements for establishing joint liability are distinct in contract and in tort" because while "[j]oint liability in tort requires shared causation, . . . joint liability in contract requires what amounts to joint promises" (internal quotation and citation omitted)); *Gurrobat v. HTH Corp.*, 323 P.3d 792, 809 (Haw. 2014) ("Regarding contractual agreements, 'joint and several liability' is defined as 'liability of copromisors of the same performance when each of them, individually, has the duty of fully performing the obligation[.]' *Black's Law Dictionary* 837 (6th ed. 1990). . . . Imposition of joint and several liability turns on whether the parties have promised the same performance to a third party.").

The government also relies upon *Campbell County Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457 (Tenn. Ct. App. 1984), a thirty-year old case from the intermediate Tennessee appellate court. In that case, the appellate court reviewed the trial court's decision, in which the latter found "joint and several liability between and among all defendants" for breach of contract, "based on the replacement costs of a new roof for Campbell County High School." *Id.* at 460, 464. The Tennessee Court of Appeals, however, apparently did not consider the issue, *id.* at 464, and in any event cited no authority and provided no rationale to support the trial court's imposition of such liability. Moreover, the Tennessee appellate court remanded the case "so as to determine the proper dollar liability of the defendants . . . in the manner hereinbefore set forth." *Id.* at 467. Thus, if anything, the court implicitly rejected joint and several liability. *Id.* ("The architects alone are responsible for that additional sum for it was their failure to live up to their contract with the owner that was the cause of that loss.").

The Court further rejects the government's reliance on *In re Merritt Logan, Inc.*, 901 F.2d 349 (3d Cir. 1990), a case that the government cites, but does not discuss.  Def. Second Supp. Br. at 10.  In that case, the United States Court of Appeals for the Third Circuit, applying New Jersey state law, held that a vendor, manufacturer, and installer were jointly liable on both breach of warranty and negligence theories for damages caused by a defective refrigeration system.  901 F.2d at 365, 368–69.  Similar to the *Campbell County* decision, *Merritt Logan* affirmed the imposition of joint and several liability on the defendants in the absence of any clear precedential authority to do so. Instead, the court simply indicated that "the New Jersey Supreme Court's general discussion of the differing rationales behind the award of damages in tort and contract" in an earlier case supported the extension of joint and several liability to the facts at issue in *Merritt Logan*.  *Id.* at 368–69 (discussing *Spring Motors Distribs. v. Ford Motor Co.*, 489 A.2d 660 (N.J. 1985)).  But, the earlier New Jersey state case itself "strictly speaking, involve[d] only an interpretation of the scope of the warranty provisions of Article 2 of the U.C.C."  901 F.2d at 369.  Moreover, the Third Circuit found that the plaintiff in *Merritt Logan* "was a third party beneficiary" of a contract containing the warranty at issue.  In that regard, the New Jersey Supreme Court, in *Spring Motors*, did nothing more than "creat[e] an implied assignment of contract rights to a subsequent purchaser" such that the court "abolish[ed] vertical privity . . . to allow an ultimate purchaser to sue a remote manufacturer under the [U.C.C.]."  *Spring Motors*, 489 A.2d at 677.  This Court is not by bound the Third Circuit's decision in *Merritt Logan* or New Jersey state law, and we decline to extend New Jersey's "breach of warranty theory" to the facts of the instant case, even assuming that state's law would permit the imposition of joint and several liability on JLK and MDB given the facts alleged here.  901 F.2d at 365 n.14 (noting "that *Spring Motors* allows Merritt Logan to recover . . . only on a breach of warranty theory").[7]

_____

[7] *See also Paramount Aviation Corp. v. Agusta*, 288 F.3d 67, 71 (3d Cir. 2002) ("[I]t is important to note that *Spring Motors* and *Alloway* deal exclusively with product liability law in the context of relationships governed by the U.C.C. and with parties in the direct line of the product's chain of distribution."); *Emerson Radio Corp. v. Orion Sales, Inc.*, 2000 WL 49361, at *8 (D.N.J. Jan. 10, 2000) ("*Spring Motors* dealt only with the tort theories of strict liability and negligence."), *aff'd*, 253 F.3d 159 (3d Cir. 2001); *ETV, Inc. v. Ross Gear Div. of TRW, Inc.*, 1989 WL 308036, at *2 (W.D. Mich. Nov. 7, 1989) (explaining that while "New Jersey permits recovery of economic losses under an implied warranty claim by a non-privity plaintiff[,] *Spring Motors Distrib., Inc. v. Ford Motor Co.* . . ., 98 N.J. 555, 489 A.2d 660 (1985)[,] . . . two noted commentators on the U.C.C. surveyed the stated and concluded that, in the absence of privity, the majority of states do not permit a non-privity plaintiff to recover economic losses on a breach of an implied warranty"); *Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842, 860 n.15 (N.D. Cal. 2000) (explaining that *Spring Motors* addressed "whether an express warranty from the manufacturer and/or dealer would apply to a remote parts supplier" and that the New Jersey Supreme Court held only "that a buyer need not establish privity with a remote supplier in a 'distributive chain' to maintain an action for breach of warranty").

That the COFD at issue seeks tort damages and, thus, is fatally defective is perhaps best illustrated by *Crescent Univ. City Venture, LLC v. AP Atlantic, Inc.*, a decision of the North Carolina Superior Court, the reasoning of which we quote at length and adopt here:

> [T]he approach of imposing joint and several liability [plaintiff] seems to advocate appears to be embraced by only a handful of states. According to *Corbin on Contracts*, the norm is quite different:
>
>> In the law of torts, if the wrongful acts of others were also contributing factors, they and the defendant are sometimes regarded as "joint tortfeasors," each one is liable for the whole loss or harm. In the contract field, however, if the acts of others who are not joint obligors (whether wrongful or not) are contributing factors, those others are not thereby joined with the defendant as having committed the breach of contract.
>
> 11 Arthur L. Corbin & Joseph M. Perillo, *Corbin on Contracts* § 55.9 (rev. ed. 2005). . . .
>
> [The] law is ill-suited to cope with the fallout of imposing joint and several liability on multiple parties for breaching independent contracts. As previously discussed, our law does not allow for contribution or imply in law a right to indemnification between parties in the absence of a tortious injury. Consequently, our law would afford little recourse to one of several parties who, after being held jointly and severally liable for breach of contract, contends it has paid more than its fair share. . . .
>
> Finally, the policies underlying tort law—in which joint and several liability is more common—and contract law are different. The average plaintiff in a tort lawsuit does not choose his or her tortfeasors. Contracting parties, by comparison, have the ability to allocate risk among themselves at the outset of a transaction and are encouraged to do so. As a result, considerations supporting the application of joint and several liability in the context of torts, such as "protect[ing] plaintiffs from defendants who are unable to pay judgments entered against them," *Edmonds v.*

*Compagnie Generale Transatlantique*, 443 U.S. 256, 275 n.2, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979) (Blackmun, J., dissenting), do not apply to parties whose remedies lie in contract. Were the Court to hold [some parties] jointly and severally liable with other parties for their alleged breaches of independent subcontracts here, the Court would essentially be importing a facet of tort law into a case otherwise governed by the law of contract. . . .

*Crescent Univ. City Venture, LLC v. AP Atl., Inc.*, 2019 WL 3765313, at *26 (N.C. Super. Aug. 8, 2019) (footnote and select internal citations omitted); *see also BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 853 (2004) ("The only allegations of defendants' misconduct are based on their alleged breach of contract, despite plaintiff's gloss that in doing so, they breached their duties. This is an improper attempt to recast a breach of contract cause of action as a tort claim. Nor is there any social policy that would demand resort to tort remedies. Without any action sounding in tort, there is no basis for a finding of potential joint and several liability on the part of defendants. . . .").

Accordingly, this Court declines to adopt the concurrent breach doctrine to apply joint and several liability in a breach of contract case involving multiple, distinct agreements.[8]

## 2. The Government Cites No CDA Cases Supporting Our Jurisdiction Over A COFD Asserting Joint and Several Liability Against Two Different Contractors Under Different Contracts

The government maintains that "the Court *does* have jurisdiction over the appeal presented here precisely because it is rooted in contract – not tort." Def. Second Br. at 6 (emphasis added). The government argues that because the contract at issue in this case "is a CDA contract, it is subject to this Court's CDA jurisdiction, recognized in section (a)(2) of the Tucker Act – not the Court's ancient broader jurisdiction found in section (a)(1)." *Id.* at 7. As such, the government, citing *Awad v. United States* and other cases, argues that because any potential "tort claim stems from a breach of contract, the cause

---

[8] If anything, the COFD's resort to a theory of joint and several liability supports JLK's motion to dismiss for failure to state a claim, although the Court does not reach that issue given our lack of jurisdiction. *See Lichter v. Mellon-Stuart Co.*, 305 F.2d 216, 220 (3d Cir. 1962) ("[W]e think the court was justified in concluding that a substantial amount of the lump sum which Southern proved as the extra cost of the masonry work was the consequence of factors other than a breach or breaches of contract by Mellon. Since the court could find no basis for allocation of this lump sum between those causes which were actionable and those which were not, it was proper to reject the entire claim." (citing *Kremer v. United States*, 88 F. Supp. 740, 116 Ct. Cl. 358 (1950), and *J. J. Kelly Co. v. United States*, 69 F. Supp. 117, 107 Ct. Cl. 594 (1947))).

of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of [this Court]."  Def. Second Supp. Br. at 7 (citing 301 F.3d 1367, 1372 (Fed. Cir. 2002)).

But the government's argument amounts to no more than an assertion – one with which this Court, of course, agrees – that this case generally involves CDA contracts and alleged contract breaches.  The Court also agrees that "a Government or contractor claim that asserts tortious conduct 'arising in contract' does not sound in tort for purposes of Tucker Act jurisdiction."  Def. Second Br. at 8 (quoting *Awad*, 301 F.3d at 1371).  The jurisdictional defect here lies, however, in the government's theory of recovery:  joint and several liability cannot be invoked to hold JLK liable for another party's breach of a separate contract any more than the government or JLK can be held liable for punitive damages in this Court.  For example, if a contractor submitted a CDA claim to a contracting officer asserting a breach of contract, and included therein a demand for the payment of punitive damages in a sum certain, this Court would lack jurisdiction over a subsequent complaint in this Court seeking such punitive damages. *See, e.g., Trevino v. United States,* 557 F. App'x 995, 998 (Fed. Cir. 2014) (holding that "the trial court does not have jurisdiction over . . . claims for injunctive relief and punitive damages"); *Hurt v. United States*, 134 F. App'x 446 (Fed. Cir. 2005) (affirming this Court's decision "that it lacked jurisdiction . . . over punitive damages claims"); *Thomas v. United States*, 328 F. App'x 620, 621 (Fed. Cir. 2008) (affirming this Court's decision that it lacks jurisdiction over "requests for punitive damages"); *Envtl. Safety Consultants, Inc. v. United States*, 95 Fed. Cl. 77, 98 (2010) (holding, in CDA case, that "[t]he Court of Federal Claims has no jurisdiction to grant punitive damages"); *Rig Masters, Inc. v. United States*, 42 Fed. Cl. 369, 373 (1998) (holding that "punitive damages [is] a remedy not available in this court"); *Garner v. United States*, 230 Ct. Cl. 941, 943, 1982 WL 25283 (1982) ("the granting of . . . punitive damages [is] not within the jurisdiction of this court").  The government's COFD in this case – having asserted entitlement to a sum certain based upon a theory of joint and several liability – should fare no better.

The government's reliance upon cases holding that a tortious action also may constitute a breach of contract – or that a "tort claim [may] stem from a breach of contract" without defeating this Court's contract jurisdiction, *see Awad*, 301 F.3d at 1372 – are inapposite.  In *Awad*, for example, the plaintiff, a foreign national, alleged that he had been brought to the United States to testify against a terrorist group based upon the representation that the United States government would assist him in becoming United States citizen.  *Id.* at 1369–70.  When the plaintiff did not receive a United States passport, he brought suit against the government alleging a variety of intentional torts, as well as a claim that the government was negligent in failing to follow through on its contractual commitment to provide him with a passport or United States citizenship. *Id.*  The Federal Circuit ultimately concluded that plaintiff's claims "sound[] in contract and therefore [are] properly within the jurisdiction of the Court of Federal Claims." *Awad*, 301 F.3d at 1372.  Specifically, the Federal Circuit noted that "[a]lthough Mr.

Awad uses terminology appropriate for a tort claim, as the discussion above makes clear, the efforts undertaken to obtain citizenship and a passport for Mr. Awad grew out of alleged contractual obligations." *Id.* at 1374.

The present case is distinguishable from *Awad* in an important respect. In *Awad*, the plaintiff alleged damages flowing solely from a breach of a contract where the plaintiff was in privity with the government. The plaintiff did not attempt to leverage a tort theory of damages to claim a sum, in whole or part, based upon another party's independent contract with the government. In this case, however, the government's counterclaim for the sum demanded in the COFD is not attributable solely (or perhaps even mostly) to JLK's alleged breach of contract, but rather to both JLK's and MDB's alleged separate breaches of distinct contracts. The government makes no effort in the COFD or in its Counterclaim to apportion liability to each specific contractor. Nor does the government point to any contractual provision in which JLK or MDB warrant each other's performance. Rather, the government attempts to evade its burden of proof against JLK by leveraging a tort theory of damages to (potentially) obtain a judgment for the same sum from two different contractors under two different contracts.

The government next cites *Alridge v. United States,* 67 Fed. Cl. 113, 121 (2005), for the proposition that this Court possesses jurisdiction even over claims which appear to be tort claims where this Court "would have jurisdiction based on the inherently contractual nature of the claims." In *Alridge,* the plaintiff alleged various personal injuries that the plaintiff had sustained based on the alleged actions of the Department of Veterans Affairs ("VA"). 67 Fed. Cl. at 114–15. In that case, the plaintiff did not allege any contract with the government. *Id.* at 121. Relying upon *Awad,* 301 F.3d at 1372, this Court in *Alridge* commented that "[i]f the tort claims in this case had arisen from a contract between Plaintiff and the Government, the United States Court of Federal Claims would have jurisdiction based on the inherently contractual nature of the claims." 67 Fed. Cl. at 121. That is an uncontroversial proposition with which this Court likewise agrees. The problem for the government here, again, is not the lack of a contract or breach allegations, generally. The problem is that the damages theory – based, as it is here, on joint and several liability – sounds in tort.

The government also relies upon the following language in the Federal Circuit's decision in *Wood v. United States*: "If an action arises 'primarily from a contractual undertaking,' jurisdiction lies in the Claims Court 'regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.'" 961 F.2d 195, 198 (Fed. Cir. 1992) (quoting *San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)). Once again, this Court has no quarrel with such a basic proposition; all that case holds, however, is that negligent behavior may breach a contract. Critically, however, *Wood* acknowledges that an alleged loss must result from the "manner in which *defendant* performed *its contract.*" *Id.* (emphasis added). In this case, the government seeks to hold the counterclaim-defendant, JLK, jointly and

severally liable for another contractor's breach of a separate contract, not JLK's own
contract with the government.[9]

The government further argues that "a Government or contractor claim that
asserts tortious conduct arising in contract falls within the Court's CDA jurisdiction
precisely because it 'relat[es] to a contract[.]'" Def. Second Br. at 8 (quoting 41 U.S.C.
§§ 7103(a)(1), (a)(3)). But the Court's point here is not that we lack jurisdiction because
the government's claim asserts tortious conduct, but rather because the damages theory
asserted in the COFD sounds in tort. Again, the government cannot, pursuant to the
CDA, hold one contractor liable for another contractor's breach of a separate contract.
Such a result necessarily relies upon a tort theory of damages over which this Court has
no jurisdiction.

### B. The CDA's Statutory Language And Implementing Regulations Support Dismissal

The government frames the central issue in this case as "whether the CDA
authorizes a contracting officer to issue a single COFD that embodies multiple
Government claims against multiple contractors involving multiple contracts." Def.
Second Supp. Br. at 2. The more accurate framing of the issue, however, is whether the
CDA authorizes a contacting officer to issue a single COFD holding two different
contractors liable under two different contracts for the same, undifferentiated alleged
injury, essentially making the private parties joint contractors. *See* Def. Second Supp.
Br. at 9 (discussing the *Restatement (Second) of Contracts* § 433(A)(2) (addressing "breach
of a joint contract")).

The government itself correctly acknowledges that "to constitute a proper claim
under the CDA, the claim must, among other things, 'relat[e] to a contract.' 41 U.S.C.
§ 7103(a)(2) & (a)(3)[.]" Def. Second Supp Br. at 7. The government further argues that
"the CDA does not mandate that the COFD embody only a single Government claim."
*Id*. at 2 (arguing that "the CDA requires that each Government claim relating to a
contract be the subject of a COFD, but it does not follow that each COFD must reference
only one Government claim"). According to the government, "[n]othing in the plain
language of the CDA prohibits a COFD from making determination[s] and findings
regarding multiple claims. . . ." *Id*. While true statements, they are all red herrings.

---

[9] Similar to *Alridge*, discussed *supra*, the issue here lies not in the existence of a contract (which is
undisputed), but rather in the theory of recovery. In *Wood*, the court focused on determining
whether the claims themselves were contractual for the purposes of jurisdiction. *Wood*, 961 F.2d
at 197. Here, in contrast, the damages theory on which the CO predicated the sum certain claim
is clearly one sounding in tort. Thus, while a tortious breach of contract falls within this Court's
jurisdiction, it does not follow that this Court still maintains jurisdiction when the basis for
recovery is one which is founded in tort law rather than contract.

The Court first focuses on the statutory language. The CDA covers a "claim by the Federal Government against _**a**_ contractor related to _**a**_ contract. . . ." 41 U.S.C. § 7103(a)(3) (emphasis added). The key statutory phrases for our purposes are "_**a**_ contractor" and "_**a**_ contract." _Id._ (emphasis added). The COFD at issue here, however, relates to _two_ distinct contracts – one for each of two distinct contractors – and seeks to hold both contractors liable not only for the same exact injury, but also for damages resulting from each other's alleged breach of contract. As demonstrated above, the government cites no case or statutory language supporting our jurisdiction over such a CDA claim, premised, as it is, on joint and several liability principles.

Moreover, in arguing that the COFD at issue specifies a required "sum certain," _see_ FAR 2.101, the government implicitly identifies the difficulty it faces, acknowledging that "[t]he contracting officer has found only that, [JLK and MDB] _together are in breach_ and, therefore, _together_ they are responsible." Def. Second Supp. Br. at 4 (emphasis added). But, what, precisely, are JLK and MDB "together . . . in breach" of? The slight-of-hand is deft, but the government cannot gloss over the missing object of the implied prepositional phrase: the word "contract." In that regard, as we repeatedly have noted, there simply is _no_ single contract to which JLK and MDB are parties in joint privity with the government; and, there is no single instrument that the COFD or the Counterclaim alleges JLK and MDB "together" have breached.[10] JLK may be liable for some sum certain resulting from its putative breach of contract, but JLK cannot be held liable for MDB's independent breach of a separate contract to which JLK is not a party. In contrast, what the government has tried to accomplish in its COFD is to shoehorn a tort theory of recovery into a contract claim to avoid having to parse out liability.

The government argues that the Court's view "would suggest that, unless the contracting officer can pinpoint the proportionate share [of damages], the Government is entitled to assert no claim." Def. Second Supp. Br. at 4. There are two problems with the government's assertion. First, the government's concern is not even an accurate

---

[10] Similarly, 41 U.S.C. § 7103(a)(1) provides that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." Would the government really permit multiple contractors under different contracts to submit a single, joint claim alleging that the government breached multiple contracts and is therefore liable to the contractors, collectively, for a single sum certain specified in the single claim? That is a rhetorical question, to be sure, but the Court suspects it knows the answer. In that regard, if "a contractor" and "relating to a contract" are terms that are going to mean something in the context of contractor CDA claims against the government, those terms must be given the same meaning in § 7103(a)(3). _Harbert Int'l, Inc._, ASBCA No. 44873, 1996 WL 756751 (Dec. 31, 1996) (explaining that "the essence of the term 'claim,' and the statute and applicable regulations and contract clauses make no distinction between the parties in the use of that term" and holding that "[w]here a statute makes identical terms applicable, without distinction, to the Government and to a private party, we are unwilling to attach different meanings to the same words for the benefit of the Government").

*reductio ad absurdum* insofar as the government remains free to issue a COFD holding each contactor responsible for whatever sum it believes is due and owing attributable to a particular contractor's breach of a specific agreement that creates privity with the government. *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed. Cir. 1983) (Tucker Act's jurisdictional "concept of privity is mirrored in the CDA"); *Fid. & Deposit Co. of Maryland v. United States*, 14 Cl. Ct. 421, 423 (1988) ("The CDA presumes the existence of privity of contract. . . ."). Second, there is nothing unreasonable – or, more importantly, contrary to the terms of the CDA – about this Court's holding that the CDA indeed requires that the government determine what sum of damages is attributable to the breach of a specific contract by a specific contractor. Indeed, both the plain language and practical mechanics of the CDA support the Court's interpretation.

Put differently, all the Court holds in this case is that, pursuant to the CDA, the government cannot issue a COFD determining that JLK is liable for MDB's breach of the latter's contract (and vice-versa), in reliance upon a tort theory of damages to avoid parsing out the quantum of liability to each contract and contractor. That the CDA precludes the government's approach in this case is evident in this assertion the government makes in its second supplemental brief:

> The COFD, which references ***the two contracts at issue***, and identifies various obligations that JLK and MDB violated arising out of ***those contracts***, sets forth a Government claim that falls well within the CDA's requirement that a claim "relat[e] to ***a*** contract." 41 U.S.C. § 7103(a)(3).

Def. Second Supp. Br. at 11 (emphases added). The inconsistency in language is apparent. While the government candidly explains that its COFD relies upon "references [to] the two contracts at issue," there is, in fact, only one contract at issue in the instant case: JLK's contract with the government. And while the COFD "identifies various obligations that JLK and MDB [allegedly] violated[,]" the COFD claims damages for the breach of "*those* contracts" – plural – not for "***a*** contract" as required by the CDA. *Id.* Relatedly, the government does not explain how the COFD properly can hold JLK liable for MDB's putative breach of its own, independent contract to which JLK is not a party.

The FAR's definition of "claim" similarly supports the Court's approach in this case. The FAR provides: "*Claim* means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to ***the*** contract." FAR 2.101 (emphasis added); FAR 52.233-1(c)&(d)(1). The FAR's definition of "claim" thus clearly anticipates the issue of a demand by a contacting party under a single contract or, at a minimum, only to the counterparty or counterparties of "the contract" – and does not permit the issuance of a claim collectively holding responsible multiple contractors under different contracts. *Id.*

The purpose of the CDA's administrative claim process – including the requirement for a contracting officer's final decision – further supports the Court's statutory interpretation here, at least as applied to the facts of this case. As Judge Allegra explained in *N. Star Alaska Hous. Corp. v. United States*, "the twin purposes of the CDA's administrative exhaustion requirement" are "to screen out unwarranted or inflated claims . . . and to facilitate resolution of contract disputes by negotiation, at the agency level, rather than by litigation. . . ." 76 Fed. Cl. 158, 184 (2007) (citing *CPS Mech. Contractors, Inc. v. United States*, 59 Fed. Cl. 760, 764 (2004), *Kirkham Constrs., Inc. v. United States*, 30 Fed. Cl. 90, 93 (1993) (citations omitted), *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1566 (Fed. Cir. 1995), and S.Rep. No. 95–118 at 7–8 (1978) (claim requirement was to "induce resolution of more contract disputes by negotiation prior to litigation")). The idea is that either the government or the contractor – depending upon the recipient of the claim – must be told exactly how much to pay the claimant in order to resolve the claim via accord and satisfaction. In contrast, where "no sum certain is specified, the contracting officer cannot settle the claim by awarding a specific amount of money 'because such a settlement would not preclude the contractor from filing suit seeking the difference between the amount awarded and some larger amount never specifically articulated to the contracting officer.'" 76 Fed. Cl. at 184 (quoting *Exec. Court Reporters*, 29 Fed. Cl. 769, 775 (1993), and citing *CPS Mech. Contractors*, 59 Fed. Cl. at 765). In this case, the government asserts that JLK "must pay [$1,938,866.86] to satisfy the Government's claim – *unless it is otherwise satisfied*." Def. Second Supp. Br. at 4 (emphasis added). In other words, according to the government, JLK's liability may fluctuate depending upon the outcome in MDB's case before the CBCA. *Id.* at 14 (explaining the government's view that its "claim against JLK is not moot until MDB tenders . . . the full amount of the judgment for $1,938,866.66"). The problem is evident: in the real world, neither JLK nor MDB knows what sum to pay to the government to resolve the COFD via accord and satisfaction, and there is no incentive to pay any sum until each party knows the result of the other's case. *Exec. Court Reporters,* 29 Fed. Cl. at 775 ("Whenever a contracting officer fully settles a claim, the contractor cannot take an appeal, according to the doctrine of accord and satisfaction.").

Moreover, if *both* contractors *were to pay* the sum claimed in the COFD, the government will obtain an unjustified windfall – an outcome which the government admits would be improper.[11] Def. Second Supp. Br. at 5. The government likely would respond that the COFD only requires that the parties jointly pay the sum total claimed in the COFD. *Id.* at 4 ("The parties may, of course, negotiate their share."). But, such an approach – where two different contractors are required to negotiate amongst themselves in order to know how much to pay the government in order to resolve a COFD – runs counter to the language and purpose of the CDA. The Court can find no

---

[11] Indeed, this possibility also exists should both JLK's and MDB's respective cases proceed, as discussed *infra*, which is another indication that the government's approach to its claimed damages is improper and the COFD defective.

indication in the CDA's language or the case law indicating that Congress intended to permit the agency's approach here (*i.e.*, to force a negotiation amongst two different contractors in order for each to settle a CDA claim and avoid the government's double recovery).

Finally, the Court readily recognizes that its decision here is somewhat in tension with the decision of the Armed Services Board of Contract Appeals ("ASBCA") in *Harbert Int'l, Inc.*, ASBCA No. 44873, 1996 WL 756751 (Dec. 31, 1996), a case not cited by the government in its briefs. In that case, the government itself, ironically, argued for the very reading of the CDA the Court adopts here. Indeed, the ASBCA in *Harbert Int'l* rejected the *government's* position "that use of the terms 'a contract,' 'the contract' or 'this contract' in the singular in the CDA, the FAR and the Disputes clause, respectively, precludes consideration of a single claim under more than one contract." *Id.* The ASBCA described the government's reading of those provisions as constituting "hypertechnical argument concern[ing] mere semantics." *Id.*

While this Court does not necessarily ascribe to the ASBCA's invocation of the CDA's broader purpose in lieu of the statute's plain language,[12] the Board in *Harbert*

---

[12] In this case, the CDA's plain language cannot be read as elastically as the government's position here would require. *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition."); *but see* 1 U.S.C § 1 ("*unless the context indicates otherwise*— words importing the singular include and apply to several persons, parties, or things" (emphasis added)), commonly known as the Dictionary Act. In that regard, Judge Allegra helpfully explained the role of the Dictionary Act, as follows:

> That statute allows singular nouns to be read as plurals unless— and this proves an important caveat—"the context indicates otherwise." In construing the latter proviso, the Supreme Court has stated that "context" means "the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts." *Rowland v. Cal. Men's Colony,* 506 U.S. 194, 199 (1993); *see also United States v. Vargas,* 393 F.3d 172, 174 (D.C. Cir. 2004) ("context" includes the structure and purpose of the statute). Reading the limitation in this proviso broadly, the Supreme Court has held **that a party seeking to pluralize a statutory term must affirmatively demonstrate that the modification is required to effectuate Congress' will.** As it recently reiterated, the Court has been hesitant to invoke this statute except on the "rare occasions" where "doing so [is] 'necessary to carry out the evident intent of the statute.'" *United States v. Hayes,* 555 U.S. 415, 129 S.Ct. 1079, 1085 (2009) (quoting *First Nat'l Bank in St. Louis v. Missouri,* 263 U.S. 640, 657 (1924)). And in describing when a statute's context "indicates" that the Dictionary Act ought not apply, the Court has said that neither "syllogistic force," "an express contrary definition," nor

ultimately held that "the justiciability under the CDA of a 'claim' relating to more than one contract should be determined on a case-by-case basis, with the main considerations being the relationship between the contracts to each other and the relationship between each contract and the claim." *Id.* The ASBCA in *Harbert* permitted a claim related to two contracts, but that case involved a single contractor and "a small second contract . . . for work . . . within the general scope of [the first] contract . . . ." *Id.*[13] Accordingly, the ASBCA held that the two contracts "were sufficiently related to each other and to the total cost claim Harbert submitted to the contracting officer" so as to "constitute[] a valid claim under the CDA, if properly certified." *Id.* Even assuming such a totality-of-the-circumstances test could be extracted from the language of the governing statute and regulations, the government's claim at issue – as embodied in the COFD – involves two distinct contractors performing two distinct scopes of work. In this case, the CDA's plain language, as well as the statute's broader purpose, both support this Court's finding that the COFD at issue here is invalid.[14]

---

"inanity" are required. *Rowland,* 506 U.S. at 200–01; *see also Adams v. United States,* 420 F.3d 1049, 1052–53 (9th Cir. 2005).

*Prestop Holdings, LLC v. United States*, 96 Fed. Cl. 244, 248–49 (2010) (emphasis added) (parallel citations and footnotes omitted). The government has not demonstrated that the Court should read the CDA more broadly than both the ASBCA *and the government itself* did in *Harbert.*

[13] Even if the CDA's use of singular terms were not meant to exclude a claim relating to more than one contract, extending such an interpretation to cover multiple claims, under multiple contracts, against multiple contractors, does not make practical sense for the reasons the Court explains herein. Moreover, where Congress wants to permit a contract claim related to multiple contracts, Congress knows how to do so. 41 U.S.C. § 1503(b) ("Contract price adjustment") (providing for CDA jurisdiction for cost accounting disputes involving "relevant *contracts* between the Federal Government and the contractor" (emphasis added)).

[14] The ASBCA in *Harbert* also noted that "[a]ppeals involving a single Government CDA claim against a contractor relating to multiple contracts are also quite common[,]" but the key phrase is "**_a_** contractor" – not multiple contractors. *Harbert Int'l*, 1996 WL 756751, n.6. Again, the government has not identified a single case that involves a COFD similar to the one at issue here. To be clear, this is not a case in which the government merely happens to be pursuing the same numerical amount of damages from two different contractors under two different contracts that are related to the same overall project. Rather, the government is pursuing the precise same quantum from each contractor for the same alleged injury, such that "[i]f JLK tenders that amount to GSA, that payment would moot MDB's CBCA appeal because there would be nothing left for the CBCA to adjudicate." Def. Second Supp. Br. at 4. Presumably, the opposite would be the case, too, but the government makes no effort to explain how our Court's jurisdiction can depend upon another tribunal's resolution of a different case.

### C. RCFC 19 And The CDA's Consolidation Provisions Support The Court's Decision

The government, in a footnote of its second supplemental brief, asserts that it is "*not* pursuing joint and several liability in this action for the reasons stated in [its] initial supplemental brief." Def. Second Supp. Br. at 10 n.1 (emphasis added). In that footnote, the government cites a law review article for the proposition that, for joint liability, "all defendants must be sued together and their liability adjudicated in one action." *Id.* (citing Bussel, *Liability for Concurrent Breach of Contract*, 73 Wash. U. L. Q. 97, 111 (1995)). First, the Court is unsure of government's intended point insofar as that commentary on joint liability would seem to undermine the government's position in this case, given that MDB is not before the Court. Second, "joint liability" is distinct from "joint and several liability," as explained *supra*.[15] Third, and most importantly, the government's attempted disclaimer that it is *not* proceeding on a damages theory of joint and several liability – absent any explanation, thorough or otherwise – borders on frivolous in light of the *many* assertions in its brief to the contrary. *See, e.g.*, Def. Second Supp. Br. at 1 (acknowledging that the COFD found JLK and MDB "jointly liable"); *id.* at 3 (arguing that the COFD contains a sum certain because "the [CO] is clear that JLK and MDB are jointly liable for the entire amount" and because "joint and several liability is *a well established principle of liability*" (emphasis added)); *id.* at 4 ("Because the COFD determined that JLK is jointly liable for 'all of the costs' . . . in the amount of $1,938,866.86, *JLK must pay that amount* to satisfy the Government's claim – unless it is otherwise satisfied." (emphasis added)); *id.* at 10 (arguing that "[j]oint and several liability is simply a means of apportioning damages" and that "[t]he damages to be apportioned could stem from breach of a contract – *as is the case here* – or they could arise from a tort claim." (emphasis added)).

Even more to the point, the government continues to assert that if it were to "obtain[] a judgment in full against MDB, that judgment would not – independent of collection – moot the government's claim against JLK because there is a possibility that

---

[15] *See also Tilcon Capaldi, Inc. v. Feldman*, 249 F.3d 54, 62–63 (1st Cir. 2001) ("At common law, the phrase 'joint and several' refers to the liability of multiple wrongdoers (typically, for torts). It means that damages are a single sum specified in the judgment, that each wrongdoer is liable for the full amount, but the wronged party cannot collect under the judgment *more* than the single sum. *Restatement (Third) of Torts* § 20 & cmt. b (Proposed Final Draft (Revised) 1999). Joint liability (typically, for breach of contract) does not differ in these respects, contrary to Tilcon's assumption; each party jointly liable for a judgment for breach of contract is liable for the full amount. 2 Bromberg & Ribstein, *Bromberg & Ribstein on Partnership* § 5.10(b), at 5:91–92 (2000); 12 Richard A. Lord, *Williston on Contracts* § 36:1, at 610 (4th ed. 1999) . . . . The difference in the two types of liability is in certain *other* details, largely vestiges of common law procedure, which still bite where they have not been abolished. Importantly, the common law rule was that all those jointly liable had to be sued together or the suit would be dismissed, and that a settlement with one of those liable discharged all of the others.").

MDB might fail to pay the full amount of the judgment, either due to an inability to pay, or otherwise." Def. Second Supp. Br. at 13.  In that case, the government argues, it "could still purse its claim against JLK *for whatever amount the Government failed to collect from MDB.*" *Id.* (emphasis added).  That, however, *is* the very operational definition of joint and several liability.  In that regard, in *McDermott, Inc. v. AmClyde*, the Supreme Court explained that "[j]oint and several liability . . . can result in one defendant's paying more than its apportioned share of liability when the plaintiff's recovery from other defendants is limited by factors beyond the plaintiff's control, such as a defendant's insolvency." 511 U.S. 202, 220–21 (1994).  In such a case, "[w]hen the limitations on the plaintiff's recovery arise from outside forces, joint and several liability makes the other defendants, rather than an innocent plaintiff, responsible for the shortfall." *Id.*  This is further evidence that the damages theory the government is pursuing here sounds in tort. *State Farm Mut. Auto. Ins. Co. v. Lincow*, 30 F. Supp. 3d 368, 372 (E.D. Pa. 2014) ("That so-called 'one satisfaction rule' 'has its roots in elementary principles of tort law,' and it is now embodied in both the Restatement (Second) of Torts and the Restatement (Second) of Judgments." (quoting *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1276 (11th Cir. 2008))).

More significantly still, it is far from clear that JLK would have any right of contribution against MDB under the facts of this case, insofar as the government alleges neither that JLK and MDB are jointly obligated to the government on a particular contract, nor that they are joint tortfeasors *per se*.[16]  *Donovan v. Robbins*, 752 F.2d 1170, 1178 (7th Cir. 1985) ("the Supreme Court remains reluctant to use its own common law powers to allow contribution under federal statutes that do not provide for it expressly"); *Knox v. Herman Gerel, LLP*, 2014 WL 2880277, at *16 (E.D. Pa. June 24, 2014) ("The cases that Plaintiff cites to support a claim for contribution here all rest on the theory that 'joint obligors' who are both liable for the same debt have a right of contribution from each other when one pays the debt on behalf of the other. . . . Those cases involved situations where the 'joint obligors' were each a party to a promissory note or guaranty and thus were liable for the debt."); *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 603 (5th Cir. 2010) ("The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability." (quoting Restatement (Second) of Torts § 886(A) (1979))).

Given that JLK and MDB are not joint obligors nor joint tortfeasors, the Court has serious concerns regarding whether, pursuant to RCFC 19(b), this case should proceed at all, even assuming for the sake argument the Court otherwise has jurisdiction here. *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 360 (2d Cir. 2000) (noting that "[c]laims for breach of contract may be more susceptible to dismissal under Rule 19(b)

---

[16] Indeed, the government is trying to obtain the benefits of joint and several liability all while avoiding the joint tortfeasor label.

than claims sounding in copyright and tort"). Typically, "[j]oint tortfeasors . . . are not indispensable parties, but merely permissive parties" under RCFC 19 because "joint and several liability permits the plaintiff to recover full relief from any one of the responsible parties, *which party then has the option of suing for contribution or indemnity*." *City of New York v. Waterfront Airways, Inc.*, 620 F. Supp. 411, 413 (S.D.N.Y. 1985) (emphasis added) (internal citations omitted). "Thus, there is no legitimate fear of multiple obligations." *Id.*; *see S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.*, 2015 WL 846533, at *15–16 (D. Mass. Feb. 26, 2015). In contrast, that does not seem to be the case here for JLK (or MDB, for that matter) because, again – putting aside the government's joint and several liability theory – the contractors, in fact, are neither joint obligors nor joint tortfeasors.

In any event, the government makes no attempt whatsoever to explain how all of its various statements catalogued above may be reconciled with its assertion that it is not pursuing a claim of joint and several liability or that "the counterclaim does not seek a finding that MDB [and JLK] [are] jointly and severally liable for the piping failure." Def. Supp. Br. at 2. The government cannot have its cake and eat it, too.

The CDA's consolidation statute further justifies the Court's concerns. The CDA provides contractors with a choice of forum for the appeal of, or action challenging, an unfavorable CO decision: the contractor may either pursue its claim as an action in this Court, or the contractor may choose the alternative route of appealing to a Board of Contract Appeals ("BCA"). *See* 41 U.S.C.A. § 7104 ("[*I*]*n lieu of* appealing the decision of a contracting officer under section 7103 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims . . . ." (emphasis added)); *see also LaBarge Prod., Inc. v. West*, 46 F.3d 1547, 1554 (Fed. Cir. 1995) ( "[A] contractor, at its free election, may bring a CDA claim either in the Court of Federal Claims or before the Board . . . "). Notwithstanding the contractor's ability to make a forum selection in the first instance, the CDA provides the Court of Federal Claims with the power to transfer and consolidate cases in the interests of efficiency, convenience, or justice:

> [i]f 2 or more actions arising from *one* contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of the actions in that court or transfer any actions to or among the agency boards involved.

41 U.S.C.A. § 7107 (emphasis added). As noted in the statutory language itself and further clarified by case law, courts have broad discretion to transfer and consolidate suits. *See Morse Diesel Int'l, Inc. v. United States*, 69 Fed. Cl. 558, 563 (2006); *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1280 (Fed. Cir. 1985). Such discretion, however, is

inherently limited by the language of the CDA, which provides only the Court with the power to transfer or consolidate and, even then, the Court may do so only with respect to actions arising from a *single* contract.[17]

In this case, the JLK Task Order is separate and distinct from the MDB Delivery Order. While both agreements concern the same NLRB space, the contracts between GSA and each respective contractor contemplated manifestly different work – the agreement between JLK and GSA involved professional design services, while the agreement between MDB and GSA focused on construction of the space. COFD at 1; Counterclaim ¶¶ 4–5. That both agreements involved the same work site is irrelevant; GSA entered into distinct agreements with JLK and MDB in order to procure different services from each contractor.

Accordingly, this Court has no authority pursuant to the CDA to transfer or otherwise consolidate this case with GSA's claim against MDB pending before the CBCA.

As discussed, *supra*, the COFD purports to hold JLK liable based on its own contract with the government, as well as based upon MDB's contract with the government – two distinct agreements with two distinct scopes of work and contractors. The government thus seeks recovery here from JLK in the sum of $1,938,866.86 claimed in the COFD, but also is simultaneously pursuing the identical, full amount against MDB in another forum.[18] Thus, under the government's joint and several liability approach, the possibility of the government's double recovery is neither hypothetical nor remote. Although RCFC 19 may require the Court to consider whether we have all indispensable parties before us, the government argues, and the Court agrees, that the Court has no power to transfer this case or to otherwise consolidate it with MDB's CBCA matter. Def. Second Supp. Br. at 16.

To be clear, the government recognizes the double recovery concern is valid, but essentially responds "trust us." Def. Second Supp. Br. at 5–6. We reject the government's preferred wait-and-see approach. The Court (and the parties) should not have to engage in a process where the government may obtain a double recovery, and where – under the CDA's statutory scheme – the Court appears to have no power to ensure that the COFD's merits are resolved in one matter. Absent the consolidation of these cases, there simply is no feasible way to ensure that any judgment(s) are consistent or to avoid the government's double recovery – after all, although the government admits that it seeks the full amount claimed in the COFD against each contractor in separate forums, the government should not be entitled to a windfall. *See*

---

[17] We note that this result is consistent with our view of a proper CDA claim and COFD as not extending to multiple contractors under different contacts.

[18] *Appeal of Master Design Build, LLC*, CBCA No. 6331.

*LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363, 1371 (Fed. Cir. 2003) (quoting 3 E. Allen Farnsworth, *Farnsworth on Contracts* 193 (2d ed. 1998) ("[A]n injured party should not be put in a better position than had the contract been performed . . .")).

While the government acknowledges that it "is not entitled to double recovery and a windfall in excess of its damages," and consequently that "a CBCA judgment in favor of the Government could *potentially* limit the amount the Government would be entitled to recover in this litigation," *see* Def. First Supp. Br. at 3 (emphasis added), the government's approach here provides this Court – and more importantly, JLK – with no assurances, no procedural method, and no substantive rule to ensure that the government will *not* seek a double recovery via two separate judgments in two separate fora.[19]  In response to that concern, the government merely represents that it "would not seek to collect in excess of that [total] amount" in the COFD and thus "there would [be] no need for the post-judgment involvement of either tribunal in the Government's collection efforts."  Def. Second Supp. Br. at 5.  The problem again, however, is that the government all but concedes that there simply is no mechanism to preclude a double recovery.  *Id.* (explaining that "the effect of both judgments would be that both MDB and JLK were liable for the entire amount of the repair costs at issue" and that "there would be no role for either tribunal to play with respect to determining how . . . the damages award is allocated between MDB and JLK").

Indeed, were the government to obtain a judgment for the full $1,938,866.86 against *both* JLK *and* MDB – in, respectively, this Court and the CBCA – it is far from clear that such judgments would be subject to collateral attack by the contractors on any ground (*i.e.*, double recovery or otherwise).  *United States v. Renda*, 709 F.3d 472, 486 n.17 (5th Cir. 2013) ("In this case, the government did not introduce the underlying [CDA] judgments against Renda Marine, but instead offered direct evidence of its underlying

---

[19] This concern further implicates the applicability of Rule 19.  *Whyte v. Bader*, 57 B.R. 784, 785 (N.D. Ill. 1985) ("As to the factors under Rule 19, the first consideration is prejudice to the absent party or those already parties.  It is clear that allowing this case to proceed may allow plaintiff to reap double recovery, since the claims are nearly identical to those pending in the adversary proceeding. . . . The inquiry under this section is simply whether, as a practical matter, a judgment in this suit would prejudice absent parties."); *Rozier v. Hartford Ins. Co. of the Midwest*, 2014 WL 6751639, at *2 (S.D. Fla. Dec. 1, 2014) (applying Rule 19 to avoid possibility of "multiple suits and double recovery"); *Williams v. Bank of N.Y. Mellon*, 2010 WL 2772630, at *2 (N.D. Tex. July 12, 2010) (applying Rule 19, and agreeing "that disposing this case without [a particular party's] joinder would leave the parties subject to a substantial risk of incurring multiple or . . . two monetary judgments leading to double recovery"); *Burns v. Universal Crop Prot. All.*, 2009 WL 10676550, at *3 (E.D. Ark. July 17, 2009) (noting "the possibility of further litigation is not speculative as Plaintiffs have filed suit in state court against absent defendants"); *Thurston v. Page*, 168 F.R.D. 655, 656 (D. Kan. 1996) (finding "joinder is essential for a just adjudication of this case" where "[t]hese dual lawsuits create an environment ripe for both inconsistent judgments and double recovery").

claim against Renda Marine: the Final Decision. Although the government used
different methods of proof, in both cases the underlying claim against the company had
been resolved with finality *and was not subject to collateral attack*." (emphasis added)).   In
that regard, an easier way to see the problem created by the government's approach in
this case involves asking what the result would have been had JLK and MDB not filed a
timely action or appeal with, respectively, this Court and the CBCA.   The answer is that
the government would be able to double recover (*i.e.*, to enforce separate judgments
against both contractors), without any ability of the contractors to collaterally attack the
COFD or to resist the government's collection efforts.   41 U.S.C. § 7103(g) ("The
contracting officer's decision on a claim is final and conclusive and is not subject to
review by any forum, tribunal, or Federal Government agency, unless an appeal or
action is timely commenced as authorized by this chapter."); *Renda Marine, Inc. v. United
States*, 509 F.3d 1372, 1380 (Fed. Cir. 2007) (quoting *United States v. Kasler Elec. Co.*, 123
F.3d 341, 346 (6th Cir. 1997) ("Absent commencement of such review [of a COFD]
within the prescribed period of time, the decision becomes impervious to any
substantive review." (internal citations omitted) (emphasis in original))).

This Court very much doubts that Congress intended to create such a situation,
and the government points to no statutory or regulatory language – and no case law –
supporting the notion that the government may pursue the same damages quantum for
the same injury against two different contractors under two different contacts in two
different fora under the same COFD.   Def. Supp. Br. at 2 ("[W]e are not aware of any
case involving a defective design claim . . . in which a Court has applied the doctrine of
joint and several liability.").   In the Court's view, the fact that neither the Court nor the
CBCA can preclude the government from a double recovery at a minimum suggests
that the government's approach to this matter is erroneous.

* * * * *

The Court reemphasizes its point, *supra*, that nothing herein leaves the
government without a remedy.   The government is free to issue a new final decision
against each contractor, without relying upon a tort damages theory, for each
contractor's breach of its own contract.   Of course, if the government does not proceed
*seriatim* against each contactor, there may be some risk to the merits of the government's
claim – *e.g.*, due to inconsistent allegations, along the lines of what JLK appears to argue
in its motion to dismiss – although the Court expresses no opinion whatsoever on that
score.   The government also may avail itself of RCFC 14 as a means of (potentially)
gathering all interested parties before the Court in a single matter.   RCFC 14(b)(1) ("The
court, on motion or on its own, may notify any person with the legal capacity to sue or
to be sued who is alleged to have an interest in the subject matter of the suit.").   *Baha v.
United States*, 123 Fed. Cl. 1, 7 (2015) (holding, in a CDA case, that where other parties
"may have an interest in the outcome of this litigation, the court orders that they must
be given notice under RCFC 14(b)"); *Uusi, LLC v. United States*, 110 Fed. Cl. 604, 610
(2013) ("Rule 14 Was Not Affected by the Repeal of 41 U.S.C. § 114"); *Myrtle Beach*

- 34 -

*Pipeline Co. v. United States*, 6 Cl. Ct. 363, 366 (1984) ("There is nothing in the language of the CDA or its legislative history which suggests in any way that Congress intended to change the existing settled case law relative to third-party practice in the Court of Claims, which settled law has been adopted by this court."). On the other hand, to the extent that the CDA's statutory language simply does not address the type of situation alleged to exist here, or to the extent the CDA's procedural peculiarities make the process cumbersome for the government, the government's remedy lies with Congress; this Court cannot create jurisdiction where none exists. *Parkinson v. Dep't of Justice*, 874 F.3d 710, 717 (Fed. Cir. 2017) ("If the statute is to be changed to provide [jurisdiction], the remedy lies with Congress and not this court."); *cf. Esparraguera v. Dep't of the Army*, -- F.3d. --, 2020 WL 7086054, at *7 (Fed. Cir. Dec. 4, 2020) (court cannot "*expand* the Board's limited jurisdiction where Congress foreclosed review" (emphasis in original)).

## CONCLUSION

For all of the above reasons, both the government's COFD and the Counterclaim rely upon a damages theory sounding in tort, and, thus, the COFD is invalid and this Court lacks subject-matter jurisdiction to decide this case. Accordingly, both the plaintiff's Complaint and the government's Counterclaim are **DISMISSED**, without prejudice, pursuant to RCFC 12(h)(3).

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge